UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 08-01916-MD-MARRA/JOHNSON

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates To:
ATS ACTIONS

08-80421-CIV-MARRA
_____/


**"NEW JERSEY" PLAINTIFFS' OPPOSITION TO ATTORNEY PAUL WOLF'S
"CROSS-MOTION" FOR SUPPLEMENTAL DISCOVERY**

**I.      INTRODUCTION**

Attorney Paul Wolf's "Cross-Motion" seeking supplemental discovery, DE 971, is directed toward Plaintiffs' Counsel in *John Doe I et al. v. Chiquita Brands Int'l et al.*, No. 08-80421 (S.D. Fla.) (hereinafter, the "NJ Case" and "NJ Plaintiffs' Counsel"), as well as counsel in two other cases who joined the motion seeking to enforce the Court's order against Mr. Wolf, DE 968. Oddly, it is not directed at Terry Collingsworth, the attorney who Mr. Wolf believes has more information about payments to former Colombia paramilitaries. As to the NJ Plaintiffs' Counsel, Mr. Wolf's Cross-Motion is entirely misdirected.

The NJ Plaintiffs' Counsel have not paid any witnesses in this case, have not been part of any scheme to pay witnesses, and have no knowledge of any actual payments to witnesses in this case. And there is no *evidence* to suggest otherwise; what the evidence *does* show is that the NJ Plaintiffs' Counsel have inquired of Mr. Collingsworth whether payments were made to any witnesses in this case and were told there were none. Attorney Paul Wolf raises only baseless and unsubstantiated allegations. Unsubstantiated allegations do not trigger the crime-fraud exemption to

1

the work-product doctrine.

Mr. Wolf demands that Plaintiffs supplement discovery that Chiquita, not he, was authorized to propound. Chiquita has proven that it is perfectly capable of protecting its rights and enforcing this Court's orders. Mr. Wolf's Cross-Motion is not needed to ensure compliance with Chiquita's requests. Furthermore, NJ Plaintiffs have no further documents to produce. NJ Plaintiffs' Counsel are only withholding documents pursuant to this Court's orders.

If necessary to put this issue to rest, however, the NJ Plaintiffs' Counsel are willing to submit any remaining withheld documents to the Court, or a neutral party such as a special master or magistrate judge, for *in camera* review. While we do not lightly disclose our confidential work product, with respect to witness payments, we have nothing to hide.

## II.  BACKGROUND

In December 2014, several Plaintiff teams moved for emergency discovery of former AUC paramilitary commanders that were scheduled to be released from Colombian prison. DE 688. The Court granted that request this past April. DE 759. The Court put conditions on that order: prior to the deposition of any paramilitaries, Chiquita was authorized to take limited discovery from all Plaintiffs' counsel "addressing the issue of (non-expert) witness payments." *Id.* at 12. This condition was in light of allegations that Mr. Collingsworth had paid former paramilitaries in connection with his litigation against the Drummond Company. *Id.* at 11-12.

After Chiquita propounded its requests, the Court sustained privilege objections to the production of documents addressed to the propriety of paying witnesses, DE 797 at 3, and limited the scope of responsive materials to those documents that reflected payments to witnesses in the Chiquita litigation or which related to witnesses that were in fact paid or offered payment, *id.* at 4-5. The NJ Plaintiffs' Counsel then submitted supplemental responses. DE 808. In those responses (and in every response), NJ Plaintiffs' Counsel have disavowed any knowledge of payments to any

2

paramilitary witnesses. DE 808 at 2. This is supported by documentary evidence produced to Chiquita, Mr. Wolf and this Court. For example:

> Email from Marco Simons, January 13, 2010: "Also . . . is it safe to assume that Tijeras and Hasbun have not been provided with any payment or other things of value in exchange for their testimony or interviews?"
> Email response from Terry Collingsworth, January 13, 2010: "Yes, you can be assured that no payments were made to these guys . . . ."
>
> Memo from Jack Scarola, July 12, 2011: "Terry Collingsworth . . . stated that absolutely no payments have been made to date and no commitments have been made to make payments to or for the direct benefit or indirect benefit of any potential Chiquita witness."
>
> Email from Terry Collingsworth, October 8, 2013: "[W]e have continued discussions with Hasbun, but have not and will not provide any funds for whatever reason unless and until we agree and we have a sound ethical foundation for doing so."
>
> Email from Terry Collingsworth, October 9, 2013: "We did not take any steps to provide security or any other assistance to witnesses in Chiquita."

Declaration of Marco Simons ("Simons Decl."), Ex. 1 – Ex. 4. Mr. Wolf has provided no evidence that would suggest that the NJ Plaintiffs or their Counsel have any involvement in any allegedly improper activities.

Mr. Wolf responded to Chiquita's requests for production by producing hundreds of documents (hereinafter, the "Wolf Documents") – many of them irrelevant – without making any objections. DE 797 at 6-7. That production included work product of the NJ Plaintiffs' Counsel and other MDL attorneys, which had been shared with Mr. Wolf. After the NJ Plaintiffs' Counsel told Chiquita that Wolf did not have authorization to disclose their privileged work-product, Chiquita turned over the Wolf Documents to the Court for *in camera* review. *Id.* at 7. The MDL Plaintiffs then submitted a privilege log and objections to the production of the Wolf Documents. DE 809. On August 4, 2015, this Court (with full access to the documents) ruled on the MDL Plaintiffs' objections to the release of the Wolf Documents and upheld the privilege objections with a single exception for parts of a declaration drafted by Mr. Wolf himself. DE 872 at 6.

In the August 4 Order, the Court also addressed two lingering discovery disputes between the NJ Plaintiffs and Chiquita arising out of a motion to compel. DE 872 at 4-5. As a result, the NJ Plaintiffs' Counsel produced additional redacted materials to Chiquita, and provided the Court with unredacted copies of those documents. Simons Decl. ¶ 5.

In addition to the witness payment discovery issues, on August 3, this Court ordered that: Plaintiffs choose a single representative for each deposition; "discussions within Plaintiffs' counsel . . . regarding preparations for these examinations, or any other issues of joint coordination in this MDL, shall proceed under a mutual understanding of confidentiality . . .;" and, costs be shared between all Plaintiff counsel "who wish to participate in the examinations." DE 865 at 1-2. After Mr. Wolf violated those orders – by disclosing Plaintiff discussions to Chiquita and failing to share costs – several plaintiff teams sought sanctions to force him into compliance. DE 968.

**III.   ARGUMENT**

Although he never sought to propound discovery nor received permission to do so, Mr. Wolf demands that the NJ Plaintiffs' Counsel supplement their discovery by producing any documents that they have withheld on privilege grounds but which would be subject to the crime fraud exception. DE 971. It is unclear what Mr. Wolf thinks falls within that exception. But this Court has already ordered that documents concerning the propriety of witness payments (and which do not discuss actual payments) are protected work product; Plaintiffs have already produced all responsive documents that reflect discussions of actual payments; and this Court is already in possession (in part by virtue of Wolf's own production) of unredacted copies of many withheld documents. NJ Plaintiffs' Counsel have not participated in any crime or fraud. There are no other documents to produce and supplementation is not needed.

4

## A. Plaintiffs are not withholding any privileged documents that would be covered by the crime-fraud exceptions to the work-product doctrine.

### 1. Documents and responses at issue.

The NJ Plaintiffs' Counsel have withheld from production thirty documents that had *once* been identified as responsive, but privileged. Simons Decl. ¶¶ 4-6. These documents, all listed on the amended privilege log filed on April 24, 2015, DE 782-1,[1] were withheld because they included: (1) documents that reflect the work product of other MDL attorneys (including Mr. Collingsworth) and (2) documents that reflect the work product of the NJ Plaintiffs' Counsel. The NJ Plaintiffs' Counsel cannot produce other attorneys' work product without clear direction from the Court. As for their own work product, none of the NJ Plaintiffs' documents were created in furtherance of any crime or fraud. As the NJ Plaintiffs' Counsel have repeatedly stated, aside from Mr. Wolf's allegations and Mr. Collingsworth's denials, they have no information or documents reflecting the actual existence of payments to any witness in this case by Mr. Collingsworth (or any other person). DE 772-2, DE 808-1.

Of these thirty documents, fifteen – labeled Documents 6-12, 15-17, and NJ-1 – NJ-5, on the privilege log, DE 782-1 – relate to the ethics and propriety of paying witnesses, which this court expressly ruled were privileged. DE 797 at 3. They contain no facts relating to any payments. Simons Decl. ¶ 6. One document – Document 20 – was withheld because it was a response to a bar complaint; this Court previously ruled that because bar complaints are intended to be confidential, they were non-discoverable. *See* DE 876 at 2; DE 872 at 6-7. Another document – Document 2 – is entirely irrelevant; it was an email attaching a partly responsive document but contains no responsive information itself. Simons Decl. ¶ 7.

---

[1] The remaining documents from the April 24 privilege log were all produced. The NJ Plaintiffs produced twelve of them in response to the Court's August 4 Order, ten of them in redacted form with unredacted versions submitted to the Court for *in camera* review. At the same time, the NJ

5

The remaining thirteen documents – Documents 21-24, 28, 31-32, 34, and NJ-6 – NJ-10 – were ultimately withheld from production not on the basis of privilege but because they do not "concern[] the fact of payments to paramilitary payments allegedly made by Mr. Collingsworth or any other party" in this case. DE 872 at 4; *see also* DE 797 at 4. These documents were all created after the "witness payment" issue had arisen in the *Drummond* litigation. Most of them contain confidential discussion of how that issue might affect the *Chiquita* MDL, but to the extent they contain any facts, those facts relate to witnesses in *Drummond* which do not overlap with this case. Simons Decl. ¶ 8. While these documents were originally identified pursuant to Chiquita's original discovery requests, this Court then ruled that documents relating to witness payments were only responsive if the document related to the payment of actual or potential witnesses "in this case," and only calling for production of documents relating to other cases to the extent they "involved overlapping witnesses." DE 797 at 4. In light of that ruling, Plaintiffs did not produce these documents because they do not contain any information concerning payments to any witness in this case. Simons Decl. ¶ 8. These documents are not responsive to the requests as narrowed by the Court. The Federal Rules certainly do not require the production of non-responsive documents. If necessary, the NJ Plaintiffs will amend their privilege log to reflect this Court's Order and delete the non-responsive documents (although they also remain protected work product).

### 2. All of these documents are validly withheld and not subject to the crime-fraud exception.

The NJ Plaintiffs' Counsel are withholding no documents that would be subject to the crime-fraud exception. Attorney work product – particularly that which reflects an attorney's opinions – enjoys near-absolute protection from discovery. *Cox v. Administrator U.S. Steel & Carnegie*,

---

Plaintiffs also produced four additional documents that had subsequently been identified, three of them redacted. One additional document was produced by Mr. Wolf and ordered produced in redacted form by the Court. Simons Decl. ¶¶ 4-5.

17 F.3d 1386, 1422 (11th Cir. 1994). There is a narrow exception to that near absolute privilege where the movant has made out a case for a crime or fraud. "To invoke the crime-fraud exception, the party seeking disclosure must (1) make a prima facie showing that the material was produced in the commission of criminal or fraudulent conduct and (2) that it was produced in furtherance of the criminal or fraudulent activity or was closely related to it." *Doe v. United States*, No. 08-CV-80736, 2015 WL 4077440 at *9 (S.D. Fla. July 6, 2015). *See also Cox*, 17 F.3d at 1422. The Supreme Court has provided further instruction that: "Before engaging in *in camera* review to determine the applicability of the crime-fraud exception, the judge should require a showing of a factual basis adequate to support a good faith belief by a reasonable person [ ] that *in camera* review of the materials may reveal evidence to establish the claim that the crime-fraud exception applies." *United States v. Zolin*, 491 U.S. 554, 572 (1989) (internal quotation marks and citations omitted).

Although the Alabama court in the *Drummond* case found that the crime-fraud exception applied with respect to Mr. Collingsworth, Mr. Wolf's near-complete reliance on that decision is misplaced. In that decision, the Alabama court found evidence that Mr. Collingsworth had *in fact* paid witnesses and that he had misrepresented those payments to the court. DE 971-8 (*Drummond, Inc. v. Collingsworth*, Case No. 2:11-cv-3695 (N.D. Ala.) (Dec. 7, 2015 opinion)) at 17-18, 26. In the Chiquita MDL, there is no similar evidence. Moreover, there is no indication that the Alabama court in *Drummond* has stripped Mr. Collingsworth of all work-product protections or accepted wholesale disclosure of confidential materials. Rather, the Alabama court applied the crime-fraud exception only to documents addressed to actual witness payments and misrepresentations to the court. *Id.* at 27.[2] This is no different than this Court's order, which held that discussions of actual payments to

---

[2] While Mr. Wolf seeks to vindicate his disclosures of confidential communications on the basis of the *Drummond* ruling, the Alabama court did not come close to countenancing his wholesale disclosure. The Alabama court, again like this Court, removed work-product protection *only* over Mr.

7

witnesses must be disclosed. There is no fact finding or determination from *Drummond* that should cause this Court to revisit its prior holdings and the NJ Plaintiffs' Counsel have not withheld any documents here that would be produced under the *Drummond* decision.

More fundamentally, neither Mr. Wolf nor Chiquita has provided evidence that suggests that the NJ Plaintiffs' Counsel had any knowledge of any payments to witnesses in this case, acted in furtherance of any scheme to pay witnesses, or have any documents relating to such payments. Even assuming that there is evidence of an underlying crime or fraud with respect to the Chiquita case, there is no evidence for the second prong of the crime-fraud analysis – that the NJ Plaintiffs' Counsel's work product was in furtherance of a crime or fraud or closely related to it.

Finally, the NJ Plaintiffs' Counsel have consistently disclaimed any knowledge of payments to witnesses in this case. And the evidence produced already supports this: when presented with Mr. Wolf's allegations, which were unsubstantiated by any facts, the NJ Plaintiffs' counsel asked Mr. Collingsworth and were, repeatedly, told that no payments had been made. *E.g.*, Simons Decl. Ex. 1.

### B. Wolf lacks standing to seek supplementation.

Mr. Wolf, unlike Chiquita, never sought nor obtained permission to propound discovery relating to witness payments. He has no authority to ask for supplementation. As evidenced by the flurry of briefing concerning the scope of discovery, Chiquita has already shown that it is willing and capable of ensuring that all MDL Plaintiff groups meet the terms of this Court's orders. Mr. Wolf's Cross-Motion was filed in response to Plaintiffs' Motion to Enforce Court Order, DE 968. But Motion to Enforce also does not provide a basis for seeking the NJ Plaintiffs' Counsel's work product. Plaintiffs filed that motion because Mr. Wolf has flouted this Court's orders to: (1) keep any communications between Plaintiffs' counsel in connection with MDL coordination efforts

---

Wolf's own declaration finding that it bore directly on "Collingsworth's contention that he 'forgot' about payments." DE 971-8 at 35.

confidential; (2) agree on a single attorney to examine former Colombian paramilitaries; and (3) share in the costs of the paramilitary depositions. *See* DE 968. As explained fully in Plaintiffs' Reply on the Motion to Enforce, Mr. Wolf cannot excuse his conduct, particularly where none of the confidential communications he shared with Chiquita after this Court's Order had anything to do with allegations of witness payments.

### C. The NJ Plaintiffs' Counsel have no subsequently-obtained information.

While the focus of Mr. Wolf's Cross-Motion appears to be on production of previously withheld documents, Mr. Wolf also refers to more recent documents from other cases.

To be clear, the NJ Plaintiffs' Counsel are not withholding any subsequently-obtained documents or information. The only information that we have obtained since the August 5, 2015, production is either from public documents such as those Mr. Wolf has sent to us, or information that is reflected in the discovery responses of other counsel. Simons Decl. ¶ 3. Because the duty to supplement only attaches to additional information that "has not otherwise been made known to the other parties during the discovery process," Rule 26(e)(1)(A), the NJ Plaintiffs' Counsel have no additional information to supplement.

### D. The NJ Plaintiffs' Counsel are willing to submit to *in camera* review.

There is no merit to Mr. Wolf's Cross-Motion, and it should be denied. If necessary, however, to put this issue to rest, NJ Plaintiffs Counsel are willing to produce all withheld documents for *in camera* review. We submit that the best way to proceed with any further *in camera* review would be to appoint a special master or magistrate judge to conduct the *in camera* review and thus shield this Court as factfinder from Plaintiffs' work product and strategy. *See United States v. Neill*, 952 F. Supp. 2d 834, 841 (D.D.C. 1997) (where *in camera* review may prejudice the litigants, "the more traditional alternative" is to appoint a neutral party, such as a magistrate judge or special master). *See also* Ann M. St. Peter-Griffith, *Abusing the Privilege: The Crime-Fraud Exception to Rule 501 of*

9

*the Federal Rules of Evidence*, 48 U. Miami. L. Rev. 259, 281 n. 61 & 73 (1993).

IV.     CONCLUSION

       For the foregoing reasons, Mr. Wolf's Cross-Motion should be denied.

Dated: January 11, 2016          Respectfully submitted,

/s/ Marco Simons
Marco Simons
Richard Herz[*]
**EarthRights International**
1612 K Street N.W., Suite 401
Washington, D.C. 20006
Tel: 202-466-5188
Fax: 202-466-5189

John de Leon, FL Bar No. 650390
jdeleon@chavez-deleon.com
**Law Offices of Chavez & De Leon, P.A.**
1399 SW 1st Avenue, #202
Miami, FL 33120
Tel: 305-740-5347
Fax: 305-740-5348

Agnieszka M. Fryszman
Benjamin D. Brown
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave., N.W.
West Tower, Suite 500
Washington, D.C. 20005-3964
Tel: 202-408-4600
Fax: 202-408-4634

Paul L. Hoffman
**Schonbrun, Desimone, Seplow,**
 **Harris & Hoffman LLP**
723 Ocean Front Walk
Venice, CA 90291
Tel: 310-396-0731
Fax: 310-399-7040

---

[*] Based in CT; admitted to practice only in NY.

10

> Judith Brown Chomsky
> **Law Offices of Judith Brown Chomsky**
> Post Office Box 29726
> Elkins Park, PA 19027
> Tel: 215-782-8367
> Fax: 202-782-8368
>
> Arturo Carrillo
> **Colombian Institute of International Law**
> 5425 Connecticut Ave., N.W., #219
> Washington, D.C. 20015
> Tel: 202-365-7260
> ***Counsel for John Doe I et al., Case No. 08-80421-CIV-MARRA***