UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No. 08-01916-MD-MARRA/JOHNSON

IN RE: CHIQUITA BRANDS INTERNATIONAL, INC.,
ALIEN TORT STATUTE AND
SHAREHOLDER DERIVATIVE LITIGATION
_____/

This Document Relates To:
ATS ACTIONS
_____/

08-80421-CIV-MARRA
08-80465-CIV-MARRA
08-80480-CIV-MARRA
08-80508-CIV-MARRA
10-80652-CIV-MARRA
11-80404-CIV-MARRA
11-80405-CIV-MARRA
_____/

**PLAINTIFFS' REPLY IN SUPPORT OF MOTION TO ENFORCE
COURT ORDER WITH RESPECT TO ATTORNEY PAUL WOLF,
AND FOR SANCTIONS**

I.   INTRODUCTION

Attorney Paul Wolf does not deny the plain violations of the Court's August 3, 2015 Order, DE 865, detailed in Plaintiffs' Motion to Enforce Court Order, DE 968 ("Mot."). Instead, Mr. Wolf's Response, DE 970, argues that allegations of misconduct concerning a different MDL attorney, Terry Collingsworth, serve to justify his repeated violations of this Court's Order on the preservation depositions, including the provisions concerning cost sharing and confidentiality. Mr. Wolf further claims that his disclosures of communications among MDL counsel concerning the appellate briefing strategy and the strategy and logistics related to the deposition were justified. DE 970 at 2. But Mr. Wolf's violations of this Court's Order are wholly unrelated to the issue of witness

1

payments, the purported justification.

Mr. Wolf seems to misunderstand the basic notion that the ability to have confidential discussions is essential to preparing a joint litigation strategy, and that the various Plaintiffs' counsel continue to need to work jointly on various aspects of this case – especially discovery, where (for example) depositions would be unwieldy if each counsel proceeded to question each witness in turn. This Court's Order already recognized the necessity of confidential communications in order to prepare for the depositions in Colombia. Even if Mr. Wolf's concerns were valid, he could have and should have brought them to the Court instead of simply violating the Order.

## II.     ARGUMENT

**1. Plaintiffs' counsel seek assurances of confidentiality in order to be able to coordinate with Mr. Wolf in the upcoming depositions.**

This Motion is necessary to proceed with the remaining preservation depositions. The Court ordered that only one counsel should represent all Plaintiffs in these depositions. DE 759 at 17. All counsel but Mr. Wolf have agreed on a coordinated approach. Plaintiffs' counsel sought the confidentiality order, and it was entered by this Court, to ensure that they would be able to include Mr. Wolf in discussions about the depositions. The alternative is to simply ignore him. Although Mr. Wolf claims that Plaintiffs have shown a "lack of urgency" in moving forward with these depositions, DE 970 at 14, Plaintiffs cannot do so until Mr. Wolf's participation is resolved. Plaintiffs thought they had a workable resolution after the Court's August 3rd Order, until Mr. Wolf repeatedly violated it.

Mr. Wolf seems to think that it is unfair that other Plaintiffs' counsel

refuse such coordination while Mr. Wolf forwards all their communications to opposing counsel. Mr. Wolf is wrong:

> [I]t is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests.

*Hickman v. Taylor*, 329 U.S. 495, 510-11 (1947). Plaintiffs' counsel simply cannot work with Mr. Wolf in preparing for these depositions – or on any other matter where joint work product is called for – if he continues to freely forward internal communications to opposing counsel.

2. **Mr. Wolf's disclosures have little or nothing to do with the *Drummond* witness payment allegations.**

Mr. Wolf focuses the bulk of his argument on witness payment allegations in the *Drummond* cases, but with one exception (discussed below), none of Mr. Wolf's disclosures of confidential information raised in the Motion have anything to do with the witness payment allegations in *Drummond*. Mr. Wolf repeatedly shared correspondence regarding basic litigation strategy, including correspondence about the issues on appeal, deposition preparation, and other matters with opposing counsel – and threatens to continue to do so.

This Court has already ruled that documents evidencing **facts** relating to payment of witnesses are not protected from disclosure, and no one is suggesting that Mr. Wolf needs to keep such documents confidential. That is not what this Motion is about.

Mr. Wolf does not explain why invoking "witness payments" somehow

3

forbids him from keeping confidential communications about the strategic reasons for filing a joint brief at the Eleventh Circuit. Nor does he explain why he could not keep confidential communications relating to the Roldán deposition, when these communications had nothing to do with any witness payments. Moreover, to our knowledge there has never been any allegation of any payments or offers of payment to Roldán.

The only communication that has anything to do with the "witness payment" issue is the Hendricks Memorandum, a legal analysis of the ethics and propriety of certain forms of support to a hypothetical fact witness, which Mr. Wolf forwarded to Drummond's counsel back in 2013. *See* DE 968-1 (Simons Decl.) ¶ 28. His claims about the justification of his actions, DE 970 at 5, do not bear scrutiny.[1] This Court has unequivocally ruled that documents relating to "*the propriety* of payments" to witnesses remain protected attorney work product. DE 797 at 3. Indeed, this Court also specifically ruled on this very document, which was identified as Document No. 14 on Plaintiffs' counsel's privilege log of the documents produced by Mr. Wolf, DE 809. This Court ruled that the Hendricks

---

[1] As Mr. Wolf admits, it was Drummond's counsel who sought ethical advice before talking to Mr. Wolf; there is no evidence that Mr. Wolf has received any advice that his behavior is acceptable. Moreover, according to the Alabama court order that Mr. Wolf attached, the Alabama State Bar confirmed that Drummond "could speak with" Mr. Wolf, not that the Hendricks Memorandum was not privileged. DE 970-6 (Ex. 5) at 35. Indeed, it is not clear whether the Alabama State Bar relied upon Mr. Wolf's own false assertions that he had no agreement with other counsel regarding confidentiality of work product, *see* DE 968-1 (Simons Decl.) ¶ 28. And like this Court, the Alabama court does not appear to have lifted work product protection for the Hendricks Memorandum, or relied on this memo as evidence of any crime or fraud. Rather, the Alabama court relied on **factual** assertions that Mr. Wolf had multiple conversations where payments were discussed and that therefore bore directly on the veracity of Mr. Collingsworth's statement that he forgot about the payments. DE 970-6 (Ex. 5) at 35.

4

Memorandum should not be produced to Chiquita. DE 872 at 6.

Even if Mr. Wolf were justified in releasing this piece of work product, however, there is no excuse whatsoever for his practice of wholesale forwarding all communications with other Plaintiffs' counsel to Chiquita – especially after being ordered to stop. Mr. Wolf's digression into the "witness payment" issue and the crime-fraud exception is entirely irrelevant to this Motion.

3. **Mr. Wolf does not dispute that he both agreed to confidentiality and that the Court ordered him to keep conversations confidential.**

Mr. Wolf's response does not rebut Plaintiffs' showing that 1) he agreed to keep conversations among Plaintiffs' counsel confidential, and 2) the Court ordered him to do so on August 3, 2015.

Mr. Wolf states that the undersigned counsel attempted to "convince me that the Court had ordered that our communications be confidential." DE 970 at 13. Yet the Court *did* issue such an order: "Any discussions within Plaintiffs' counsel . . . regarding . . . issues of joint coordination in this MDL proceeding, shall proceed under an understanding of mutual confidentiality. . . ." DE 865 at 1-2. Mr. Wolf's apparent continuing failure to appreciate this underscores the need for enforcement measures.

We have been over this ground before. The Court issued its Order after Plaintiffs' counsel presented the following argument:

> If Mr. Wolf wants to coordinate with other Plaintiff's counsel, accept group decisions, and keep internal strategy discussions confidential, he is free to participate just as all other Plaintiffs' counsel may participate. In that case, the Court should order that Mr. Wolf must keep discussions with other Plaintiffs' counsel confidential; in the past he has disclosed such discussions to opposing counsel.

DE 860 at 9. Mr. Wolf may disagree with this argument. The Court, however,

5

accepted it in issuing its Order and there is no reason to reconsider it now.

"Courts have inherent power to grant orders of confidentiality over materials not in the court file." *Pansy v. Borough of Stroudsburg*, 23 F.3d 772, 785 (3d Cir. 1994) (citing *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 33 n.19 & 35 (1984)). This issue rarely arises, because most counsel in an MDL do not claim a right to forward all coordinating communications to opposing counsel. Nonetheless, this Court's Order is supported by authority.

4. **Mr. Wolf admits that his representative, not chosen by the majority of Plaintiffs' counsel, participated in the Roldán deposition, and still refuses to contribute to its costs.**

Again, Mr. Wolf fails to rebut the clear evidence that he violated the Court's order concerning the procedure and cost-sharing for the Roldán deposition. He admits that he sent Mr. Morales to the Roldán deposition in order "to be involved as the legal representative of my clients in proceedings that affect them," DE 970 at 14, and does not dispute that Mr. Morales questioned the witness. He also says, "we should not have to share in the deposition cost to *defend* a deposition that we opposed." *Id.* at 15. (This appears to be a misstatement; Mr. Wolf and his counsel did not defend Roldán at the deposition.) Even if Mr. Wolf had any valid objections, he should have raised them with the Court instead of simply violating the Order.

Mr. Wolf's response to the Court's order regarding the participation of a single attorney, selected by the majority of Plaintiffs' counsel, is to say that "there was no voting, at [l]east that we know of." DE 970 at 14. It is true that Mr. Wolf was not included in the discussion of who should be designated to take the depositions, precisely because he could not be counted on to keep such

6

discussions – which involve strategic assessments – confidential. Reply Declaration of Marco Simons ("Simons Reply Decl.") ¶ 2. It is not true that there was no selection process; all counsel other than Mr. Wolf agreed that counsel Marissa Vahlsing should take the Roldán deposition. *Id.* ¶ 3.

Mr. Wolf also argues that the Movants here "cannot prove that they represent a majority of the Plaintiffs." DE 970 at 13. Mr. Wolf misunderstands this Court's order. This Court's order specifically states that the designated attorney shall be chosen by "a majority of **counsel**," not plaintiffs; that each set of counsel representing the same clients "shall be given one vote collectively"; and that "counsel shall not gain additional votes if they represent clients in multiple cases." DE 865 at 1 (emphasis added). All counsel in the MDL except for Mr. Wolf reached unanimous agreement.[2]

With respect to cost-sharing, Plaintiffs previously argued to the Court, "Mr. Wolf should also share in the financial costs of the depositions; Plaintiffs' counsel are paying for the court reporter, as well as for their interpreters at the deposition . . . and these costs should be shared equally." DE 860 at 9. The Court's order reflected this. DE 865 at 2 ("Counsel who wish to participate in the examinations shall share in the joint costs of the examinations."). All Plaintiffs' counsel except for Mr. Wolf shared equally in the costs. Once Mr. Wolf chose to participate in the examination, and he did, he cannot free ride on other counsels' resources and must share equally in the costs.

---

[2] In any event, Mr. Wolf appears to concede that the non-Wolf plaintiffs – who all did agree on the selection of Ms. Vahlsing – *do* constitute a majority.

7

**5. Mr. Wolf has no "unclean hands" excuse.**

Mr. Wolf's "unclean hands" argument is difficult to parse; he states: "[T]he Movants have unclean hands. . . . I should not be ordered to keep my communications with other plaintiffs attorneys confidential, due to the witness bribery, perjury, and fraud issue." DE 970 at 15. Essentially, Mr. Wolf maintains that because the Alabama court has found probable cause that one Plaintiffs' counsel in the MDL, Mr. Collingsworth, may have made improper payments to witnesses in another case, Mr. Wolf has the right to forward all communications, regardless of the content, with any Plaintiffs' counsel to Chiquita's counsel. This does not logically follow. Other than Mr. Wolf's unsupported statements, no one has made any allegations that any Plaintiffs' counsel other than Mr. Collingsworth has engaged in any wrongful conduct, or knew about Mr. Collingsworth's alleged wrongful conduct.[3] Indeed there is no finding in the *Drummond* case that Mr. Collingsworth committed a crime or fraud. Rather, the *Drummond* court permitted certain categories of discovery "to further explore whether a crime or fraud in fact occurred." DE 907-6 (Ex. 5) at 46.

Even if Mr. Wolf had shown any wrongdoing, he does not explain why this should allow him to 1) disclose communications that have nothing to do with any alleged wrongdoing, as he has repeatedly done and claims the ongoing right to do; 2) disobey the Court's order regarding the conduct of a deposition in Colombia; or 3) free-ride off other Plaintiffs' counsel's resources without paying

---

[3] In Section II of his opposition, Mr. Wolf states, "It is easy to state a prima facie case of witness bribery, perjury, and fraud on the court in the instant case" as well. What follows is five pages detailing events that occurred in connection with the *Drummond* case. DE 970 at 7-12.

8

his share of the expenses for a deposition in which he participated.

Mr. Wolf additionally states that "There have been no damages flowing from either: (1) the disclosure of any allegedly privileged information to Drummond or anyone else; or (2) the participation of Dr. Morales in the totally pointless, yet dangerous deposition of Jesus Ignacio Roldán." DE 970. The harms Mr. Wolf has caused in disclosing confidential work product are, to be sure, difficult to assess, because we cannot know for certain what insights opposing counsel may gain from windows into our confidential strategy. But these disclosures have already impeded Plaintiffs' MDL litigation strategy, since we are effectively prevented from coordinating any joint strategy among all plaintiffs, and created substantial extra work for Plaintiffs' counsel – most obviously in the time spent seeking a Court order on confidentiality and in the instant Motion, neither of which should have been necessary.

As for the Roldán deposition, the most obvious damages are the unpaid costs. Additionally, the Roldán deposition was short on time – the Colombian judge allowed only an hour for questions by counsel. *See* Simons Reply Decl. Ex. 4 at 41:13-15. The judge required Ms. Vahlsing to wrap up her examination, *id.* at 53:4 ("Last question."), and then gave time to Mr. Wolf's representative, *id.* at 54:1-2 – time that should have been allocated to the Plaintiffs' consensus representative. Mr. Wolf's position that the deposition was "totally pointless," DE 970 at 14, is bizarre given the fact that his representative participated in the examination. And while Mr. Wolf is correct that the deposition was "dangerous," DE 970 at 14, given the environment in Colombia, this is all the more reason that orderly procedures must be followed, and the Court's Order must be honored. If,

9

for example, a representative of Mr. Wolf were to conduct questioning of a Colombian paramilitary in an offensive or careless manner, that approach might increase the dangers to other Plaintiffs and their counsel.

### III. CORRECTION OF MISSTATEMENTS

Mr. Wolf's response makes several flatly untrue statements that may in themselves be sanctionable because he knows they are false (and, if not for the litigation privilege, would be defamatory).

Plaintiffs' counsel flatly deny any suggestion that "the Movants became willing accomplices to" any "schemes" to "pay witnesses, to suborn perjury, and to perpetrate a fraud on the court." DE 970 at 2. Indeed, because Mr. Wolf has seen Plaintiffs' sworn discovery responses to this effect, he knows his statements are not true.

Mr. Wolf also states: "Mr. Simons and others worked with Collingsworth to prepare this Jose Gregorio Mangones Lugo as a witness." *Id.* Mr. Wolf knows this is untrue; as previously stated, undersigned Plaintiffs' counsel have not contacted Mangones, DE 708 at 6 & n.3; that remains true today. Simons Reply Decl. ¶ 4.

In footnote 2 of his response, Mr. Wolf makes a series of false and unsubstantiated statements. DE 970 at 3 n.2. He claims that he repeatedly "expressed . . . concerns about Mr. Collingsworth's dealings with witnesses," and then "was 'banned' from the [group email] list shortly thereafter." However, as Plaintiffs indicated in their Motion, Mr. Wolf was excluded from the list for unrelated reasons, long after the brief hypothetical discussion of providing support to witnesses. A search turned up but three emails in which Mr. Wolf

10

could be said to be expressing concerns about dealings with witnesses, all in June-July 2011, none of which contain any facts indicating that any witness had been paid. *See* DE 860-4 ¶¶ 12-13. Mr. Wolf highlights an email from Plaintiffs' counsel Ben Brown, which stated, "We have no reason to believe that any witnesses have been 'tainted' or that any improper activities have occurred." This statement is not evidence of any misconduct whatsoever. Mr. Brown was correct in observing that there was no reason to believe that anything improper had occurred in this case. Indeed, Plaintiffs have produced redacted copies of email communications to the list at the time – and the Court has unredacted copies, DE 876 – which demonstrate the assurances that had been given that no witnesses had been paid.

## IV. CONCLUSION

Plaintiffs have established that Mr. Wolf violated both his duties of confidentiality and the Court's order, on multiple occasions. The remedies requested are warranted.

Dated: January 11, 2016

Respectfully submitted,

/s/ Marco Simons
Marco Simons
marco@earthrights.org
Richard Herz[*]
**EarthRights International**
1612 K Street N.W., Suite 401
Washington, D.C. 20006
Tel: 202-466-5188
Fax: 202-466-5189

John de Leon, FL Bar No. 650390
**Law Offices of Chavez & De Leon, P.A.**

---

[*] Based in CT; admitted to practice only in NY.

11

1399 SW 1st Avenue, #202
Miami, FL 33120
Tel: 305-740-5347
Fax: 305-740-5348

Agnieszka M. Fryszman
Benjamin D. Brown
**Cohen Milstein Sellers & Toll PLLC**
1100 New York Ave., N.W.
West Tower, Suite 500
Washington, D.C. 20005-3964
Tel: 202-408-4600
Fax: 202-408-4634

Paul L. Hoffman
**Schonbrun, Desimone, Seplow, Harris & Hoffman LLP**
723 Ocean Front Walk
Venice, CA 90291
Tel: 310-396-0731
Fax: 310-399-7040

Judith Brown Chomsky
**Law Offices of Judith Brown Chomsky**
Post Office Box 29726
Elkins Park, PA 19027
Tel: 215-782-8367
Fax: 202-782-8368

Arturo Carrillo
**Colombian Institute of International Law**
5425 Connecticut Ave., N.W., #219
Washington, D.C. 20015
Tel: 202-365-7260

**Counsel for John Doe I et al., Case No. 08-80421-CIV-MARRA**

James K. Green, FL Bar No. 229466
**James K. Green, P.A.**
Esperanté, Suite 1650
222 Lakeview Ave
West Palm Beach, FL 33401

12

Tel: 561-659-2029
Fax: 561-655-1357

Jack Scarola, FL Bar No. 169440
William B. King, FL Bar No. 181773
**Searcy Denney Scarola Barnhart & Shipley, P.A.**
2139 Palm Beach Lakes Blvd.
P.O. Drawer 3626
West Palm Beach, FL 33402
Tel: 561-686-6300
Fax: 561-478-0754

**Counsel for Jose and Josefa Lopez Nos. 1 through 342, Case No. 08-80508-CIV-MARRA**

Jonathan C. Reiter
**Law Firm of Jonathan C. Reiter**
350 Fifth Avenue, Suite 2811
New York, NY 10118
Tel: 212-736-0979
Fax: 212-268-5297

Stephen J. Golembe, FL Bar No. 137225
**Stephen J. Golembe & Associates, P.A.**
2340 South Dixie Highway
Coconut Grove, FL 33133
Tel: 305-858-0404
Fax: 305-858-3100

**Counsel for Plaintiffs Sara Matilde Moreno Manjarres et al., Case No. 08-80480-CIV-MARRA**

13